NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CAROL BELLEMARE, *Plaintiff/Appellee*,

*v.*

LEMON LAW GROUP PARTNERS PLC, *Defendant/Appellant*.

No. 1 CA-CV 19-0810
FILED 2-2-2021

Appeal from the Superior Court in Maricopa County
No. CV2016-003406
The Honorable Teresa A. Sanders, Judge

**VACATED AND REMANDED**

COUNSEL

Sonoran Advocate Law PLC, Scottsdale
By Joseph Toboni
*Counsel for Plaintiff/Appellee*

Wilenchik & Bartness PC, Phoenix
By Dennis I. Wilenchik, John D. Wilenchik, Ross P. Meyer
*Counsel for Defendant/Appellant*

_____

**MEMORANDUM DECISION**

Chief Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Jennifer B. Campbell and Judge Lawrence F. Winthrop joined.

_____

**S W A N N**, Chief Judge:

¶1　　　　Carol Bellemare obtained a jury verdict in her malpractice action against Lemon Law Group Partners PLC ("LLGP").  We vacate the judgment entered on the verdict because the superior court erred by denying LLGP's motion for a new trial.  Simply stated, the superior court did not require, and Bellemare failed to provide, sufficient evidence to demonstrate that a reasonable fact-finder would have decided in her favor in the matter in which LLGP represented her.  Further, the court failed to instruct the jury regarding Bellemare's burden to prove that she would have prevailed in the underlying matter.

**FACTS AND PROCEDURAL HISTORY**

¶2　　　　Starting in March 2014, LLGP represented Bellemare in connection with problems she experienced with a vehicle she purchased new in California (but titled in Arizona) in August 2012 for $73,566.  LLGP sent a demand letter to the vehicle manufacturer and received a settlement offer that Bellemare rejected.　Bellemare then provided LLGP with information to pursue arbitration.  LLGP prepared an arbitration packet and sent it to Bellemare for her signature in early July; Bellemare promptly signed it and LLGP confirmed receipt of her signature.  But LLGP did not file the arbitration paperwork, and Bellemare became dissatisfied with the representation.  In September 2014, LLGP sent Bellemare a letter confirming the termination of the attorney-client relationship.

¶3　　　　In January 2016, Bellemare sued LLGP for legal malpractice, asserting negligence and breach of contract related to the representation. Bellemare alleged that LLGP had failed to file for arbitration or otherwise take action to preserve her claims under Arizona's "lemon law," A.R.S. §§ 44-1261 to -1267.  According to Bellemare, her claims expired under Arizona's lemon law two years after the purchase date—i.e., in August 2014, when LLGP still represented her.  In the September 2014 termination letter, LLGP identified no specific limitation periods in the

2

"California/Arizona" matter but generally advised Bellemare: "[F]iling arbitration or close out are the remaining options. . . . If you wish to pursue this matter further you must be aware of the relevant deadline, or 'statute of limitations.'" Bellemare testified that at the time she received the letter, she believed she had lost the opportunity to pursue the matter because LLGP had repeatedly told her that Arizona's lemon law governed her case, had told her that the statute of limitations under the Arizona lemon law was "two years," and had never told her anything about California's limitations period. In January 2015, however, Bellemare called the vehicle manufacturer's customer service line and was offered a "restate[d] . . . goodwill" settlement offer of $8,000. She accepted that offer, signed a general release of claims, and traded in the vehicle the next year for $35,000.

¶4 The matter proceeded to a jury trial in August 2019. At the close of Bellemare's case in chief, LLGP moved for judgment as a matter of law. The superior court denied the motion. The jury ultimately returned a verdict finding in favor of Bellemare, calculating her damages as "$80,000 + Legal Fees" and assigning Bellemare 10% relative fault. The court entered judgment on the verdict and denied LLGP's renewed motion for judgment as a matter of law and alternative motion for new trial. LLGP appeals.

## DISCUSSION

¶5 LLGP contends that it was entitled to judgment as a matter of law under Ariz. R. Civ. P. ("Rule") 50 because the jury had no legally sufficient basis on which to find for Bellemare on either her contract or her negligence claim. The record reveals, however, that LLGP did not properly preserve its arguments under Rule 50 on either claim. First, LLGP did not challenge the sufficiency of the contract claim until its renewed motion for judgment as a matter of law. The scope of a renewed Rule 50(b) motion for judgment as a matter of law based on a failure of proof is confined to the scope of the original Rule 50(a) motion. *Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 27–28 (App. 1996). Second, though LLGP challenged the sufficiency of the negligence claim in both the original and the renewed motion, it did so on wholly different evidentiary grounds in each instance. LLGP thereby renewed nothing at all. We therefore cannot reverse and remand for entry of judgment for LLGP.

¶6 We hold, however, that the court erred by denying LLGP's motion for a new trial under Rule 59. The court may grant a new trial if the jury's verdict is not supported by the evidence or is contrary to law, or if any irregularity in the proceedings or abuse of discretion prevents a fair

trial. Rule 59(a)(1)(H), (A). We will reverse the court's denial of a motion based on insufficiency of the evidence only if the ruling reflects a manifest abuse of discretion, viewing the evidence in the light most favorable to upholding the verdict. *Styles v. Ceranski*, 185 Ariz. 448, 450 (App. 1996). But "'it is not only our right, but our duty, to set aside a verdict' if there is no evidence in the record to justify it." *Id.* (citation omitted).

¶7　　　　As an initial matter, we note that the jury's verdict is legally inconsistent with a finding of liability on the breach-of-contract malpractice claim. The verdict apportioned fault to Bellemare. Arizona does not permit comparative fault in breach of contract actions.[1] *Fid. & Deposit Co. of Md. v. Bondwriter Sw.*, 228 Ariz. 84, 88, ¶¶ 21–22 (App. 2011). But even if the jury intended to signal a finding of contract liability, LLGP would be entitled to relief. Legal malpractice does not sound in contract "absent some special contractual agreement or undertaking." *Collins v. Miller & Miller, Ltd.*, 189 Ariz. 387, 395 (App. 1996) (citation omitted). "[E]ven when there is an express contract between the professional and the client, an action for breach of that contract cannot be maintained if the contract merely requires generally that the professional render services." *Id.* Rather, "[o]nly if there is a specific promise in the contract can the action sound in contract, and then only to the extent the claim is premised on the nonperformance of that promise." *Id.* In its engagement agreement, LLGP promised generally to "diligently advocate" Bellemare's interests, provide her reasonable access to her attorneys, permit her to decide on settlement, keep her informed regarding the assigned attorneys and court proceedings, and provide her copies of documents.

¶8　　　　LLGP made no specific promises in the engagement agreement regarding making filings or providing advice on specific aspects of her claims. *Cf. Asphalt Eng'rs, Inc. v. Galusha*, 160 Ariz. 134, 136 (App. 1989) (holding that the jury could find breach of contract when attorney failed to fulfill promise to file liens and institute foreclosure lawsuits if necessary); *Towns v. Frey*, 149 Ariz. 599, 600–01 (App. 1986) (holding that legal malpractice claim sounded in contract when attorney agreed to file lawsuit and achieve satisfactory results). Bellemare contends that LLGP

---

[1]　　　The record reveals that though the jury was instructed on breach of contract, it was provided with only two forms of verdict: one for a decision in favor of LLGP, and one for a decision in favor of Bellemare with a determination of relative fault. The verdict forms therefore arguably precluded the jury from expressing a verdict on the contract claim. But Bellemare does not challenge the verdict forms.

nonetheless specifically contracted to file the arbitration paperwork because an LLGP employee stated in an email that she would submit the arbitration paperwork after Bellemare signed it. The employee's statement was not, however, an additional promise supported by consideration. *See, e.g.*, *Johnson v. Earnhardt's Gilbert Dodge, Inc.*, 212 Ariz. 381, 384, ¶ 10 (2006) ("A contract is 'a bargain in which there is a manifestation of mutual assent to the exchange and a consideration.'" (citation omitted)). We further note that the employee did not identify any date by which she would act. By articulating these defects in the contract claim, we do not imply that LLGP lacked a duty to perform certain tasks in a timely manner or advise Bellemare competently.

**¶9**     We next turn to the negligence claim. "As with all negligence claims, a plaintiff asserting legal malpractice [by reason of negligence] must prove the existence of a duty, breach of duty, that the defendant's negligence was the actual and proximate cause of the injury, and the 'nature and extent' of damages." *Glaze v. Larsen*, 207 Ariz. 26, 29, ¶ 12 (2004). Contrary to Bellemare's position at oral argument on appeal, the plaintiff always bears the burden to establish every element of the claim, regardless of how (or whether) the defendant chooses to defend. *See id.* (expressly noting that the "plaintiff . . . must prove" the elements of legal malpractice)*; see also, e.g.*, *Wells Fargo v. Allen*, 231 Ariz. 209, 213, ¶ 16 (App. 2012) (explaining, in contract cases, that "the mere absence of a genuine dispute of material fact does not automatically entitle a plaintiff [who bears the burden of proof] to [summary] judgment—the plaintiff must also demonstrate that the evidence entitles it to judgment as a matter of law"). Typically, expert testimony is used to establish the defendant's standard of care and deviation therefrom. *Baird v. Pace*, 156 Ariz. 418, 420 (App. 1987). Expert testimony is not required, however, "where the negligence is so grossly apparent that a lay person would have no difficulty recognizing it." *Asphalt Eng'rs*, 160 Ariz. at 135–36. We conclude that an attorney's failure to preserve a client's claim within the limitations period may constitute grossly apparent negligence, as may an attorney's erroneous representation to the client of the limitations period. We therefore reject LLGP's contention that Bellemare's failure to present expert testimony was necessarily fatal to her ability to carry her burden of proof.

**¶10**     But though we hold in principle that an attorney's failure to act before the expiration of a limitations period may constitute negligence, Bellemare failed to prove her theory that the Arizona lemon law's limitations period expired during LLGP's representation. A.R.S. § 44-1265(B) provides three possible limitations periods: "A consumer shall begin an action under this article within six months following the earlier of

expiration of the express warranty term or two years or twenty-four thousand miles following the date of original delivery of the motor vehicle to the consumer, whichever is earlier." The parties presented no relevant evidence regarding the warranty term or the vehicle's mileage.[2] The only conclusion supported by the evidence is that the limitations period did not expire until two years and six months after Bellemare purchased the vehicle—several months after LLGP and Bellemare's relationship terminated. Accordingly, Bellemare's only colorable theory arguably supported by the record was not that LLGP let the limitations period pass, but that LLGP misinformed her that the limitations period was "two years" and thereby caused her to fail to pursue her claims and to release them for a low settlement styled as a "goodwill" offer.[3]

**¶11**　　　　Bellemare had to establish that "but for the attorney's negligence [in misinforming her], [s]he would have been successful in the prosecution" of the lemon law action, *Glaze*, 207 Ariz. at 29, ¶ 12, assuming that the action was decided by a reasonable judge or jury, *Hyatt Regency Phx. Hotel Corp. v. Winston & Strawn*, 184 Ariz. 120, 131 (App. 1995). The record reveals that the superior court misapplied that rule. Before denying LLGP's original motion for judgment as a matter of law, in which LLGP

---

[2]　　　　The only evidence presented regarding mileage was that the vehicle had been driven twenty-nine miles when Bellemare purchased it, that in a July 2014 position statement LLGP stated that the vehicle was out of service while still having less than twenty-four thousand miles, and that the vehicle had accumulated approximately fifty-one thousand miles by the July 2016 trade-in.

[3]　　　　We note that LLGP's description in the termination letter of Bellemare's "remaining options," combined with her later acceptance of a settlement offer from the manufacturer, may undercut the reasonableness of her belief that her claims had expired. But we do not assess her credibility. *See Estate v. Reinen v. N. Ariz. Orthopedics, Ltd.*, 198 Ariz. 283, 287, ¶ 12 (2000) ("The credibility of a witness' testimony and the weight it should be given are issues particularly within the province of the jury.") (citation omitted). And though Bellemare's acceptance of the settlement affected her damages, it did not, as LLGP suggests, necessarily preclude her claim. *See Hayenga v. Gilbert*, 236 Ariz. 539, 542, ¶ 13 (App. 2015) ("Litigation malpractice claims accrue when the appellate process in the underlying litigation is completed by the issuance of a mandate, when the parties to the underlying litigation enter into a binding settlement agreement, or when the right to appeal is otherwise waived." (internal citation omitted)).

argued that Bellemare had failed to prove that she would have prevailed on the lemon law claim, the court remarked: "Okay. But we're not trying the Lemon Law case." And later, the court denied LLGP's request for a lemon law jury instruction on the theory that "it would confuse the jury, because this is not a Lemon Law case."

¶12 To meet her burden regarding the underlying lemon law case, Bellemare had to prove several elements. First, she had to prove that a reasonable fact-finder would have concluded that her vehicle suffered a "defect or condition which substantially impair[ed its] use and value . . . to [her]." A.R.S. § 44-1263(A). Next, she had to prove that a reasonable fact-finder would have concluded that an authorized dealer made "a reasonable number of attempts" to "repair[ ] or correct[ ]" the defect or condition, with a reasonable number of attempts presumed if the vehicle was "out of service by reason of repair for a cumulative total of thirty or more calendar days during the shorter of the express warranty term or the two year period [after original delivery] or twenty-four thousand miles, whichever is earlier." A.R.S. §§ 44-1263(A), -1264(A)(2). Finally, she had to prove that a reasonable fact-finder would have concluded that the repairs were "unable to conform the motor vehicle to any applicable express warranty." A.R.S. § 44-1263(A).

¶13 Bellemare did not provide the jury any evidence regarding the vehicle's problems or repairs beyond her own testimony. She testified that she first noticed oil leaking from the vehicle in December 2013, and she took the vehicle to an authorized dealer in early 2014. After keeping the vehicle "like for a week," the dealer claimed to have fixed the problem. But a week later, Bellemare noticed more leaking and brought it back to the dealer. The dealer "realized there was like some transmission that was like a different color" and, after keeping the vehicle for "11 days or so," ostensibly fixed it again. But soon thereafter the vehicle leaked again, so Bellemare again took it to the dealer. This time, "they realized that everything was cracked, and they couldn't fix the problem and then the radiator, and the head gasket, and the engine, and everything needed to be replaced." On this third visit, the vehicle was out of service for what Bellemare believed was a twenty-two-day period, ending in March. She thereafter continued to have issues with the vehicle "always" making "little noises," and "hesitating" or "giv[ing her] like a kickback" when she accelerated on the freeway; accordingly, she only drove the vehicle locally because she "was worried for [her] safety."

¶14 Bellemare's testimony was sufficient to establish that the vehicle suffered from a significant problem that persisted for several

months, and that an authorized dealer made a reasonable number of attempts to fix the problem. Her testimony was not, however, sufficient to permit a reasonable fact-finder to conclude that the repairs proved unsuccessful. Her observations of the vehicle's post-repair performance were insufficient, under either an objective or a subjective standard, to establish that the repairs proved unsuccessful. She offered no evidence that, after the conclusion of reasonable repair attempts, the vehicle continued to leak fluid or that it otherwise demonstrated continuing problems related to the past leaks or the replaced parts. She testified that she never personally serviced the vehicle or diagnosed any problems, and she confirmed her deposition testimony that she did not know whether she could have won the lemon law case. Because Bellemare failed to provide evidence sufficient to enable a reasonable judge or jury to find in her favor on the lemon law claim—and, moreover, because the superior court discouraged presentation of the necessary evidence—LLGP was entitled to a new trial.

¶15         Relatedly, the court's refusal to instruct the jury on the lemon law prevented a fair trial. Though the jury was instructed generally that Bellemare had to prove LLGP's "negligence was a cause of her injuries" because "it help[ed] produce the injury, and . . . the injury would not have happened without the negligence," the jury was not provided with the proper standard for determining causation. The absence of such an instruction likewise entitled LLGP to a new trial. *See Kauffmann v. Schroeder*, 116 Ariz. 104, 106 (1977) ("It is the duty of the court to instruct the jury on all phases of the law applicable to the facts developed at trial."); *Willett v. Ciszek-Olson*, 170 Ariz. 230, 231 (App. 1991) (holding that plaintiff was entitled to a new trial when evidence was sufficient to support giving her requested instructions). We need not address the balance of the issues raised by LLGP on appeal.

**CONCLUSION**

¶16         We vacate the judgment and we remand for a new trial. We award no attorney's fees on appeal. LLGP is entitled to recover its costs upon compliance with ARCAP 21.

